UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DISSOLVED AIR FLOATATION
CORPORATION and ACCURATE
MECHANICAL CONTRACTORS, INC.

      Plaintiffs,

    v.                                      Case No. 14-C-1223

BHARAT KOTHARI, RUDY PETERS,
RICHARD V.L. COOPER and
DAF TECHNOLOGY, LLC

      Defendants.

## DECISION AND ORDER

The Defendants have filed motions to dismiss, raising arguments including failure to state a claim and lack of subject matter and personal jurisdiction. For the reasons set forth below, I conclude the court lacks personal jurisdiction over Defendant Cooper. I further conclude that dismissal is warranted as to any claims against Defendants Peters and Kothari that are based on an alter ego theory.

**I. Background**

According to the second amended complaint, Dissolved Air Floatation Corporation was a Wisconsin company based in Kaukauna, Wisconsin. Its owner had been approached about selling the business, and eventually it began negotiations with the Defendants, whom the complaint describes as Illinois businessmen, to sell the company. In anticipation of the sale, the Defendants created DAF Technology, LLC, a Nevada limited liability company that would eventually be the vehicle for purchasing the company. Some negotiations occurred in Kaukauna and eventually an

asset purchase agreement was entered into. The parties met for what they describe as a "dry closing" that occurred in Chicago on February 2, 2012. The complaint describes Defendant Cooper as the "spokesperson" for the LLC, although the other individual Defendants were also present at the closing. (ECF No. 44 at ¶¶ 17-23.)

The closing was described as "dry" because although agreements were signed, no money changed hands. This was a result of the Defendants' funds being held up (they said) by the federal government because the money had come from out of the country. Since the closing, the complaint alleges that various of the Defendants have continued to string the Plaintiffs along, promising that the money will soon be provided, but the purchase price of $2 million has never been paid. In addition to the asset purchase agreement, the parties signed a lease whereby DAF Technology, LLC would lease commercial property in Kaukauana for the remainder of 2012 at a monthly rent of $6,500. (*Id.* at ¶ 46.) DAF Technology, LLC has not performed under the lease. The complaint seeks damages under theories of breach of contract and promissory estoppel, as well as other state law claims. It also seeks to hold the individual defendants personally liable for the actions of DAF Technology, LLC.

**II. Analysis**

The Defendants move under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief may be granted). Defendant Cooper has also moved to dismiss under Rule 12(b)(2), alleging an absence of personal jurisdiction. Because it impacts this court's jurisdiction to hear the dispute, I will address the Rule 12(b)(1) argument first.

**A. Cooper's Motion to Dismiss**

**1. Ripeness / Arbitration Agreement**

Defendant Cooper first argues that the case must be dismissed on ripeness grounds. He argues that the asset purchase agreement underlying this dispute contains a provision requiring any disputes to be subject to binding arbitration. Because arbitration has not occurred, he argues the matter is not yet ripe.

Ripeness is a justiciability doctrine designed to prevent courts from deciding potential disputes that have not yet crystallized into concrete injuries. The doctrine of ripeness, like other Article III doctrines, is "an idea ... about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary." *Allen v. Wright,* 468 U.S. 737, 750 (1984) (citation omitted) *Wisconsin Cent., Ltd. v. Shannon,* 539 F.3d 751, 759 (7th Cir.2008) ( "Ripeness is predicated on the 'central perception ... that courts should not render decisions absent a genuine need to resolve a real dispute.' ") (citations omitted). Ripeness is ultimately a question of timing. *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 538 (7th Cir. 2006).

Normally a party seeking to enforce an arbitration agreement moves to compel arbitration under the Federal Arbitration Act, which provides: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 ... of the subject matter of a suit arising out of the controversy between the parties ..." 9 U.S.C. § 4. None of the parties has moved to compel arbitration. Instead, Cooper argues that this case is unripe because arbitration has not yet occurred. But even if an arbitration clause governed this dispute, that does not mean that any controversy between the parties is merely "abstract" or unripe. In short, the

3

Plaintiffs allege the breach of an asset purchase agreement and a lease, both of which are claims based on past conduct that has crystallized into concrete legal claims. Moreover, an arbitration clause does not affect subject matter jurisdiction because parties may always waive a contractual right to arbitrate. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.,* 969 F.2d 585, 587 (7th Cir.1992). Cooper has not cited any authority for the principle that an arbitration clause would render a dispute unripe. The motion to dismiss on ripeness grounds will therefore be denied.

**2. Personal Jurisdiction**

Cooper also alleges that this court lacks personal jurisdiction over him. For a court to exercise personal jurisdiction consistent with due process, the defendant must have sufficient contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Personal jurisdiction may be either "general" or "specific." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011).[1] Here, the focus is on specific jurisdiction, because the Plaintiffs do not allege Cooper has continuous or systematic contacts with Wisconsin. A court has specific jurisdiction over a nonresident defendant when "a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984) (citation omitted). The contacts relevant to specific jurisdiction are those contacts with the forum state that are both related to the lawsuit and created by the

---

[1] The parties do not address Wisconsin's long-arm statute in any significant way. As discussed herein, personal jurisdiction turns on whether the actions of the LLC may be attributed to Cooper personally. If so, then presumably he would fall within Wis. Stat. Ann. § 801.05(6), which would provide jurisdiction based on the agreement to lease Wisconsin property.

4

defendant. *Walden v. Fiore,* 134 S. Ct. 1115, 1121-22 (2014). Specific jurisdiction is appropriate where (1) the defendant "purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state;" (2) "the alleged injury [arose] from the defendant's forum-related activities;" and (3) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Felland v. Clifton,* 682 F.3d 665, 673 (7th Cir. 2012) (citations omitted).

Some of the Plaintiffs' assertions of jurisdiction can be dispatched with summarily. For example, they highlight the fact that they suffered harm in Wisconsin and Cooper knew they were from Wisconsin. In injuring the Plaintiff, therefore, Cooper knew he was injuring Wisconsin entities. But "the locus of the harm to a plaintiff is not itself relevant to the question of personal jurisdiction; it is the defendant's contacts with the forum, not the plaintiff's, that are the critical determinants." *Kraft Chem. Co. v. Salicylates & Chemicals Private Ltd.,* 149 F. Supp. 3d 897, 902 (N.D. Ill. 2015). That is, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden*, 134 S. Ct. at 1122 (citation omitted). Thus, we are not concerned with the location of any harm Plaintiffs might have experienced. In fact, that was precisely the ground upon which the Supreme Court reversed the court of appeals in *Walden*: "Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at *plaintiffs* whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis." *Walden,* 134 S. Ct. at 1125 (emphasis added).

In order to find jurisdiction, therefore, we must focus on Cooper's contacts with Wisconsin, not his contacts with the Plaintiffs or their agents. According to the second amended complaint,

5

Cooper was present at the "dry closing" that occurred in Chicago on February 2, 2012. He was also the "spokesperson" for DAF Technologies, LLC. (ECF No. 44 at ¶¶ 17-23.) Following the closing, he had many conversations with the Plaintiffs' agents (who were located in Wisconsin) about delays in funding the transaction. All of his efforts were directed at acquiring a Wisconsin business. Given these contacts with the forum state, the Plaintiffs believe jurisdiction is adequately established.

Cooper notes he had never set foot in Wisconsin in connection with the purchase of the business. The Plaintiffs' owner, Diane Van Asten, had never met him until the closing in Chicago, after the agreements had been negotiated. He did not sign the asset purchase agreement or the lease either on his own behalf or that of DAF Technologies, LLC. (According to the complaint, he was a member of the LLC, but it does not allege he was a principal.) In fact, the asset purchase agreement indicates that Defendant Kothari "has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder." (ECF No. 47-1 at 7.[2]) There is no mention of Cooper whatsoever. Thus, it is difficult to connect Cooper to the transaction at all, much less to the State of Wisconsin. He did not travel here to negotiate the contract and did not make any promises in Wisconsin. Given the lack of connection between Cooper and Wisconsin, I cannot find any basis for personal jurisdiction over Cooper in his own right. Instead, at most Cooper had interactions with one or more individuals who themselves had Wisconsin ties, but that is not enough to find that "the alleged injury [arose] from the defendant's forum-related activities." *Felland v. Clifton,* 682 F.3d at 673 (citations omitted). Instead, the injury alleged here arose from Cooper's

---

[2]The agreement is referred to extensively in the second amended complaint, and so it may be considered in ruling on a motion to dismiss. *Hecker v. Deere & Co.,* 556 F.3d 575, 582 (7th Cir. 2009).

6

failure to pay them, a failure that has no connection to Wisconsin itself.

Perhaps recognizing that Cooper himself has inadequate ties to Wisconsin, the Plaintiffs argue that personal jurisdiction may be established if there is a basis for piercing the LLC's corporate veil. In that case, the contacts of the "pierced" entity may be attributed to those of the individual defendant. "[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court . . ." *Patin v. Thoroughbred Power Boats, Inc.,* 294 F.3d 640, 653 (5th Cir. 2002). To succeed on the alter ego theory, the Plaintiffs would not just have to pierce the veil, they would also have to show that the LLC itself would be subject to personal jurisdiction in Wisconsin.

Having agreed to lease property in Wisconsin, the LLC itself deliberately created a relationship not only with the sellers, but with the forum state itself. It would therefore not be unreasonable for a complaint alleging breach of that lease to be brought in a Wisconsin court. *IHFC Properties, LLC v. APA Mktg., Inc.*, 850 F. Supp. 2d 604, 618 (M.D.N.C. 2012) (lease "was to be performed entirely in North Carolina and involved APA's use of real property in North Carolina. . . . Given these facts, it is foreseeable that any breach of the Lease could create injury in North Carolina.") Thus, not surprisingly, the LLC does not contest personal jurisdiction in Wisconsin.

The question, however, is whether the LLC's decision to enter into a lease can be attributed to Cooper, one of its members. Cooper first argues that the alter ego question is premature, since it would only arise in the event the Plaintiffs obtain a judgment against the LLC and try to enforce it against him. That is not true. Alter ego claims are often litigated within the context of the

7

underlying litigation, meaning that plaintiffs need not wait to obtain a judgment against the corporation before they try to prove that the individual owner is personally liable. This is likely because in some cases the plaintiff's effort to obtain personal liability overshadows the merits of the claim against the corporate entity, which might be judgment proof. "[W]e do not accept the proposition advanced by defendants that an alter ego claim can only be brought after liability already has been established in an underlying cause of action or claim. We agree that because the alter ego doctrine is not a cause of action in and of itself but instead is a remedy, a plaintiff must establish liability in an underlying cause of action as the predicate for obtaining that remedy. . . . However, the fact that alter ego claims often are asserted in a separate action than the one in which liability on the underlying cause of action has been established does not mean that an alter ego claim must be filed in a separate action." *Jackson Ave. Subs, Inc. v. 407 Dearborn, LLC,* No. 16 C 4697, 2016 WL 4639152, at *6 (N.D. Ill. Sept. 6, 2016); *Wachovia Sec., LLC v. Neuhauser,* No. 04 C 3082, 2004 WL 2526390, at *10 (N.D. Ill. Nov. 5, 2004) ("No case has been found which supports the . . . contention that a piercing claim is not ripe until a separate lawsuit is first brought and fully adjudicated as against the corporation that is being pierced.")

Having concluded that it is not premature to consider veil-piercing at this stage, I must now consider whether the Plaintiffs have shown that the LLC should be disregarded. "[W]hen the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing . . . the plaintiff 'need only make out a *prima facie* case of personal jurisdiction.'" *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003) (quoting *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002)); *see also Taurus IP v. DaimlerChrysler Corp.,* 519 F. Supp. 2d 905, 918 (W.D. Wis. 2007) (discussing

8

establishing personal jurisdiction through the alter ego theory).

As Plaintiffs acknowledge, a court should look to the state of incorporation of the veiled entity to determine when and whether the corporate form should be disregarded. *Id.* at 919. Under Nevada law, courts may pierce the corporate veil only when plaintiffs establish by a preponderance of the evidence that:

> (a) [t]he corporation is influenced and governed by the stockholder, director or officer;
> (b) [t]here is such unity of interest and ownership that the corporation and the stockholder, director or officer are inseparable from each other; and
> (c) [a]dherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice.

*LFC Mktg. Grp. v. Loomis,* 8 P.3d 841, 846 (Nev. 2000).

First, the Plaintiffs allege that Cooper was listed with the State of Nevada as a managing member (along with Defendant Kothari) of the LLC. This is not persuasive evidence that the LLC is inseparable from Cooper because *by law* every LLC must have a managing member. As such, any inference drawn from the fact that Cooper was a managing member is limited. "The fact that a person is the managing member of a limited liability company and/or has a significant ownership interest therein does not in itself make that person liable for its debts." *Hodge v. Strong Built Int'l, LLC,* 159 So. 3d 1159, 1163 (La. App. Ct. 2015) (quoting *Charming Charlie, Inc. v. Perkins Rowe Assoc., L.L.C.,* 97 So.3d 595, 599 (La. App. Ct. 2012)). Moreover, the fact that Kothari was also listed as a managing member cuts against finding that Cooper was somehow the sole controlling force.

Plaintiffs also note that for some time the LLC has not been in good standing with Nevada, which suggests the Defendants viewed the corporate entity as a mere shell. This is a stronger point

9

because it suggests that the members themselves have not taken every step to treat the LLC as an entity separate and distinct from themselves. (The Defendants represent that the LLC is on path to returning to good standing in Nevada.) Even so, the mere fact that the LLC failed to file an annual report or keep up with state registration at some point is hardly enough to pierce the veil, especially under these circumstances. The LLC was created with the goal of purchasing a company. Now that the transaction has fallen through, its failure to register several years later is not particularly surprising. In addition, the registration says little about Defendant Cooper's involvement in any alter ego kinds of activities. In fact, as noted earlier, the asset purchase agreement says nothing about Cooper, and actually states that Defendant Kothari "has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder." (ECF No. 47-1 at 7.) Similarly, the lease indicates that Kothari is the contact person for any communications. (ECF No 41-2.) It would be difficult to conclude from this evidence that Cooper was somehow the secret moving force behind the entire entity.

More problematic is the fact that the Plaintiffs have put forward no evidence to suggest that adherence to the LLC form would sanction fraud or promote manifest injustice. *LFC Mktg. Grp. v. Loomis,* 8 P.3d at 846. Taking the complaint's allegations as true, all that is alleged is a business deal gone awry. Although unfortunate, that is a refrain common to countless commercial disputes that wind up in litigation. Plaintiffs were promised money and then did not receive it, despite reassurances that the money would be forthcoming soon. Under the Plaintiffs' expansive alter ego theory, piercing the corporate veil would become the norm in almost every breach of contract case simply by virtue of the breach itself. Promising to pay money and then failing to do so might be a breach of contract, but it is not the sort of fraud that allows the corporation to be disregarded. In

10

fact, piercing the corporate veil is an unusual scenario reserved for the rare case where use of the corporate form *itself* is part of a fraud. "'[I]t should be emphasized that the corporate cloak is not lightly thrown aside' and that the alter ego doctrine is an exception to the general rule recognizing corporate independence." *Loomis,* 8 P. 3d at 846 (quoting *Baer v. Amos J. Walker, Inc.,* 85 Nev. 219, 220, 452 P.2d 916, 916 (1969)). Here, there is no suggestion that the very existence of the corporate form was somehow part of an effort to perpetrate fraud. Instead, all that is alleged is that the LLC made a promise to pay and then breached that promise. The fact that the breaching party is an LLC is merely happenstance.

Similarly, there is no inkling of manifest injustice apparent from the filings, even when taken in the light least favorable to Cooper. Notably, this case involves a purchase agreement and a lease between the LLC and the Plaintiff. The sellers bound by the agreements are Plaintiff Dissolved Air Floatation Corporation and Jeff Van Asten, its manager and chief designer; the buyer is described in the documents merely as DAF Technology LLC, with no reference to any individuals. (ECF No. 47-1.) Had the Plaintiffs desired to obtain personal guarantees from the individual Defendants, it would have been a simple matter to include such provisions with the contracts themselves. Instead, the Plaintiffs appear to be attempting to obtain through litigation what they did not obtain through negotiation. The fact that the LLC might not be able to pay any judgment is not itself some sort of injustice, because that is part of the risk one assumes when voluntarily dealing with a given party.

> [T]he analysis of corporate veil issues is different in a consensual transaction, such as a breach of contract case, than in a nonconsensual transaction, such as many tort cases.... The obvious difference between consensual and nonconsensual transactions is that the claimants in consensual transactions generally have chosen the parties with whom they have dealt and have some ability, through personal guarantees, security agreements, or similar mechanisms, to protect themselves from loss.

11

*Energy & Metals Corp. v. Banks,* 896 F.2d 1557, 1577 (10th Cir. 1990).

In sum, I conclude that even if the facts alleged are taken in the light most favorable to the Plaintiffs, they could not establish that DAF Technology, LLC is the alter ego of Defendant Cooper. Accordingly, there is no means of attributing the LLC's Wisconsin contacts to Defendant Cooper, and thus no basis for personal jurisdiction in Wisconsin.

**B. Other Defendants' Motion to Dismiss**

The other Defendants have also filed a motion to dismiss, raising many of the arguments Cooper made, although they do not contest personal jurisdiction. First, they suggest (without authority) that this action is not ripe because of the arbitration clause contained in the purchase agreement. As noted earlier, however, the existence of a valid agreement to arbitrate means a party may enforce that agreement by moving to compel arbitration. It does not implicate a federal court's subject matter jurisdiction on ripeness grounds. The dispute does not require the court to resolve an abstract or academic question; it requires addressing whether any of the Defendants are liable for breaching a purchase agreement and / or a lease.

The Defendants also move to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that the complaint fails to state a claim for piercing the corporate veil. Above I concluded that there was no basis upon which to pierce the veil to find that the LLC was the alter ego of Defendant Cooper. My finding with respect to Cooper was made in the context of a determination of personal jurisdiction, and thus it does not necessarily mean that the complaint would fail to state a claim under Rule 12(b)(6), an arguably more lenient standard. However, even accepting the complaint's allegations as true, there remains no suggestion that the corporate form was used to perpetrate a fraud or that manifest injustice would result from recognizing the LLC as a distinct entity. Here,

12

given the fact that Kothari signed a personal promissory note for part of the purchase price ($750,000, out of $2 million total), it is clear that all parties to the transaction understood that Kothari the individual was distinct from the LLC itself. Moreover, the fact that only part of the price was guaranteed by Kothari is a powerful indication that the parties did not contemplate or rely on *personal* liability for anything more than that amount. "There is no fraud or injustice, hence no basis for piercing a corporate veil, without reliance by the would-be piercer." *On Command Video Corp. v. Roti,* 705 F.3d 267, 274 (7th Cir. 2013). Instead, the Plaintiffs voluntarily entered into an agreement with a newly-formed LLC and, apart from a guarantee from Defendant Kothari, they did not choose to obtain personal guarantees from other Defendants. *KMart Corp. v. First Hartford Realty Corp.,* 810 F. Supp. 1316, 1328 (D. Conn. 1993) ("[I]t would be neither equitable nor legally correct to pierce the corporate veil and find Ellis personally liable for any delict that has in fact occurred. KMart freely chose to deal with a corporate entity without the benefit of personal guarantees.")

The Plaintiffs also appear to rely in part on the fact that the complaint alleges that the individual owners, following the dry closing, continued to make representations that payment would be forthcoming very soon. The complaint also alleges that they made these promises in their capacities as individuals. (ECF No. 44 at ¶¶ 44-45.) Although individual promises might give rise to some sort of personal liability for these Defendants—for example, in a promissory estoppel claim—they again suggest that the individuals were separate from the company, not its alter ego. Thus, even if it is true that the Defendants were making promises that the money would arrive soon, that has nothing to do with whether the LLC was being used in some sort of untoward capacity. In short, there is no allegation that the LLC itself was some sort of sham designed to perpetrate fraud.

13

Instead, the complaint alleges that the Plaintiffs were voluntarily dealing with an LLC and that they also dealt with the individuals who owned it. Although the Plaintiffs describe all of the Defendants' activity as a "con," there is very little to connect the allegations to the kinds of fraud or injustice required to proceed on a theory based on veil piercing. Instead, the only perceived injustice is that the Plaintiffs might not get paid. *Hystro Prod., Inc. v. MNP Corp.,* 18 F.3d 1384, 1390 (7th Cir.1994) (to show injustice, a plaintiff requires "something more than the mere prospect of an unsatisfied judgment.") Accordingly, I conclude that any claims based on an alter ego theory must be dismissed.

**III. Conclusion**

For the reasons given above, the motions to dismiss are **GRANTED** in part, as set forth above. All claims against Defendant Cooper are dismissed for lack of personal jurisdiction. All claims alleging an alter ego theory against the other Defendants are dismissed for failure to state a claim.

**SO ORDERED** this ___26th___ day of September, 2016.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court